NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

AUG 1 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| FALLON PAIUTE-SHOSHONE TRIBE; CENTER FOR BIOLOGICAL DIVERSITY, <br><br> Plaintiffs-Appellees, <br><br> v. <br><br> U.S. DEPARTMENT OF THE INTERIOR; BUREAU OF LAND MANAGEMENT; JAKE VIALPANDO, in his official capacity as Field Manager of the Bureau of Land Management Stillwater Field Office, <br><br> Defendants, <br><br> and <br><br> ORMAT NEVADA, INC., <br><br> Intervenor-Defendant-Appellant. | No. 22-15092 <br><br> D.C. No. 3:21-cv-00512-RCJ-WGC <br><br> MEMORANDUM[*] |
| FALLON PAIUTE-SHOSHONE TRIBE; CENTER FOR BIOLOGICAL DIVERSITY, <br><br> Plaintiffs-Appellants, <br><br> v. | No. 22-15093 <br><br> D.C. No. 3:21-cv-00512-RCJ-WGC |

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

U.S. DEPARTMENT OF THE INTERIOR;
BUREAU OF LAND MANAGEMENT;
JAKE VIALPANDO, in his official capacity
as Field Manager of the Bureau of Land
Management Stillwater Field Office,

Defendants-Appellees,

ORMAT NEVADA, INC.,

Intervenor-Defendant-
Appellee.

Appeal from the United States District Court
for the District of Nevada
Robert Clive Jones, District Judge, Presiding

Argued and Submitted June 15, 2022
San Francisco, California

Before:  BYBEE, CALLAHAN, and COLLINS, Circuit Judges.

This case involves an ongoing challenge to the development of a geothermal project on federal public land located over forty miles outside of Fallon, Nevada. Although the parties are familiar with the factual and procedural history of this case, we briefly summarize it as it frames the narrow issue presented for review.

In 2015, ORNI32, LLC, a subsidiary of Ormat Nevada, Inc. ("Ormat"), applied to the Bureau of Land Management ("BLM") to construct and operate a geothermal project on federal public land located adjacent to the Dixie Meadows hot springs (the "Project").  Under the proposal, the facilities would generate power using heat from geothermal fluid extracted from deep geothermal reservoirs

underlying the land.  In November 2021, after several years of environmental and cultural resource review and tribal consultation, BLM granted Ormat's application subject to several conditions, including that the Project be constructed and operated in phases.  The Fallon Paiute-Shoshone Tribe (the "Tribe") and the Center for Biological Diversity ("CBD") (collectively, "Plaintiffs") jointly filed suit against BLM alleging violations of the National Environmental Policy Act ("NEPA"), the Religious Freedom Restoration Act ("RFRA"), and the Administrative Procedure Act ("APA")[1] and sought a preliminary injunction to stop the Project's construction during the pendency of the litigation, which the parties agreed could be resolved within six months.

This case involves two separate appeals, both challenging the district court's order imposing a preliminary injunction halting construction on the Project for a limited period of ninety days from January 4, 2022 but denying preliminary injunctive relief beyond that period of time.  Although we dismiss Ormat's appeal as moot, we have jurisdiction over Plaintiffs' cross-appeal under 28 U.S.C. § 1292(a)(1), and we affirm.

We review the grant or denial of a preliminary injunction for abuse of discretion.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  The district court's conclusions of law are reviewed de novo, while factual

---

[1] Plaintiffs also assert other claims not relevant to this appeal because they weren't raised in the motion for preliminary injunction.

findings are reviewed for clear error. *Id.* A factual finding constitutes clear error if it is "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785 (9th Cir. 2019) (quoting *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014)).

1. As a threshold matter, we determine whether we have jurisdiction to review Ormat's appeal. An appeal is moot and we lose jurisdiction to hear it "[i]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party." *In re Pattullo*, 271 F.3d 898, 901 (9th Cir. 2001) (quoting *United States v. Arkison (In re Cascade Roads, Inc.)*, 34 F.3d 756, 759 (9th Cir. 1994)).

A Ninth Circuit motions panel granted Ormat's motion to stay the ninety-day preliminary injunction on February 4, 2022, effectively providing Ormat all the relief it sought on appeal as construction was allowed to commence shortly thereafter. Even without the stay, the limited ninety-day injunction would have expired by its own terms on April 4, 2022—thus there is no longer an injunction in place from which Ormat may seek relief. *See Ahlman v. Barnes*, 20 F.4th 489, 494 (9th Cir. 2021) (holding that stay of preliminary injunction on appeal did not toll its expiration date). Accordingly, Ormat's appeal is moot and we dismiss it on that ground.

4

2.      We turn now to Plaintiffs' cross-appeal.  The Supreme Court has explained that plaintiffs seeking a preliminary injunction must establish that (1) they are "likely to succeed on the merits," (2) they are "likely to suffer irreparable harm absent preliminary relief," (3) "the balance of equities tips in their favor," and (4) "an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  We employ a "sliding scale test," which allows a strong showing on the balance of hardships to compensate for a lesser showing of likelihood of success.  *Cottrell*, 632 F.3d at 1134–35.  Thus, when plaintiffs establish that the balance of hardships tips sharply in their favor, that there is a likelihood of irreparable injury, and that the injunction is in the public interest, they need only show "serious questions" on the merits.  *Id.* at 1135.  However, where plaintiffs have not made such showings, the original four-factor *Winter* test applies.  *See All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017).

The district court did not err in applying the legal standard as it did.  While the district court found that Plaintiffs showed they would suffer irreparable harm in the absence of an injunction, it nonetheless concluded that (1) the balance of hardships tipped sharply in favor of Ormat, not Plaintiffs, after ninety days and (2) that the public interest disfavors the requested injunction.  The district court therefore properly considered whether Plaintiffs had demonstrated a likelihood of success on the merits, and not whether they had merely raised "serious questions."

5

3.     The district court first concluded that it could not find, at this early stage of the litigation and given the record before it, that Plaintiffs were likely to succeed on the merits of their claims. The district court's conclusion did not constitute an abuse of discretion because it was not illogical, implausible, or unsupported by the record. *Doe v. Kelly*, 878 F.3d 710, 713 (9th Cir. 2017) (citing *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

NEPA Claims. We review agency decisions that allegedly violate NEPA under the APA, and set aside those decisions only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Native Ecosystems Council v. U.S. Forest Serv.*, 428 F.3d 1233, 1238 (9th Cir. 2005) (quoting 5 U.S.C. § 706(2)(A)). This standard is deferential, and the court cannot substitute its own judgment for that of the agency. *See Ocean Advocs. v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 858 (9th Cir. 2005).

Plaintiffs' NEPA claims challenge BLM's decision not to prepare an environmental impact statement ("EIS").[2] In reviewing an agency's decision not to prepare an EIS,

---

[2] Plaintiffs argue that the April 2022 emergency listing of the Dixie Valley toad "is a powerful rebuke to BLM's assertions that the Project will have no significant impacts." Ormat and BLM counter that the emergency listing cannot be considered on appeal because it was not before BLM when it approved the Project or the district court when it considered Plaintiffs' NEPA challenge to BLM's decision. Given the narrow issue before us on this interlocutory appeal, we agree that the recent emergency listing is beyond the scope of our review. *See Tri-Valley*

6

> [We] employ an arbitrary and capricious standard that requires us to determine whether the agency has taken a "hard look" at the consequences of its actions, based [its decision] on a consideration of the relevant factors, and provided a convincing statement of reasons to explain why a project's impacts are insignificant.

*Am. Wild Horse Campaign v. Bernhardt*, 963 F.3d 1001, 1007 (9th Cir. 2020) (alteration in original) (quoting *Envtl. Prot. Info. Ctr. v. U.S. Forest Serv.*, 451 F.3d 1005, 1009 (9th Cir. 2006)). Where, as here, an agency has prepared an environmental assessment ("EA") and concluded a proposed action will not have significant environmental effects, the "inquiry is whether the responsible agency has reasonably concluded that the project will have no significant adverse environmental consequences." *Save the Yaak Comm. v. Block*, 840 F.2d 714, 717 (9th Cir. 1988) (internal quotations omitted).

The district court reasonably determined that, under this deferential standard and at this stage of the proceedings, Plaintiffs did not demonstrate a likelihood of success on their NEPA claims. First, the district court reasonably found that there was more than sufficient baseline information (i.e., flow test, hydrogeological model, USGS data regarding Dixie Valley toad) available to BLM on the relevant environmental issues in connection with its development of both the EA and the

---

*CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1130–31 (9th Cir. 2012) (recognizing post-decisional bar to extra-record materials in NEPA cases). Of course, if Plaintiffs amend their complaint to allege additional claims, the emergency listing may become relevant.

Aquatic Resource Monitoring and Mitigation Plan ("ARMMP"), including water resources and species information. Therefore, the district court properly deferred to "BLM's application of its technical expertise to draw reasonable inferences from the available scientific information." Plaintiffs fail to show that this conclusion amounts to an abuse of discretion, given the level of deference afforded to the agency under the APA.

Next, the district court reasonably concluded that BLM's reliance on the ARMMP as part of its finding of no significant impact ("FONSI") was not arbitrary and capricious. BLM was not required to mitigate impacts to zero to justify a FONSI. *Wetlands Action Network v. U.S. Army Corps of Eng'rs*, 222 F.3d 1105, 1121 (9th Cir. 2000), *overruled on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (en banc). Additionally, under NEPA, proposed mitigation need only be "developed to a reasonable degree." *Id.* Although BLM independently concluded that geothermal development was unlikely to affect the springs (based on the hydrogeological model and flow test), it nevertheless developed the ARMMP to address unanticipated impacts and impose meaningful mitigation measures as needed.

The district court also rejected Plaintiffs' argument that BLM violated NEPA by failing to meaningfully consider the visual impacts of constructing the Project in an area visible from the Tribe's sacred site. The district court permissibly

8

focused on facts in the record demonstrating that BLM took steps to minimize visual impacts of the Project, including the requirement that buildings be painted consistent with BLM's visual color guidelines and comply with dark-sky lighting practices, as reflected in the EA.

APA Claims. Plaintiffs' APA claims allege that BLM deviated from agency direction on the protection of sacred sites described in a November 2021 Joint Secretarial Order and a November 2021 Memorandum of Understanding. Plaintiffs argue that BLM's failure to follow these policies demonstrates that it did not consider relevant factors or articulate a rational connection between the facts found and choices made, in violation of the APA. We find that the district court reasonably concluded that Plaintiffs did not demonstrate how the extensive consultation process BLM undertook since 2007 was insufficient under the topics raised by the policy documents, particularly given the numerous consultation meetings with the Tribe between 2010 and 2021 and the proposed Memorandum of Agreement. The district court's conclusion that Plaintiffs failed to demonstrate a likelihood of success on the merits of their APA claims was not an abuse of discretion.

RFRA Claim. Finally, the Tribe's RFRA claim alleges that the Project substantially burdens its exercise of religion because the geothermal facility will desecrate the site, making its religious exercise "impossible." This claim is

foreclosed by *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1063, 1069–70 (9th Cir. 2008) (en banc), which held that "a 'substantial burden' is imposed only when individuals are forced to choose between following the tenets of their religion and receiving a government benefit or coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions."  Even "spiritual[] desecrat[ion]" of a sacred area does not constitute force or coercion needed to show a substantial burden under this standard.  *See id.* at 1070; *see also Apache Stronghold v. United States*, 38 F.4th 742, 756 (9th Cir. 2022) ("Where there is no substantial burden, there is no ground to apply the 'compelling interest' test, and thus no RFRA violation—no matter how dire the practical consequences of a government policy or decision.").  Therefore, the district court did not abuse its discretion in concluding that the Tribe failed to demonstrate a likelihood of success on its RFRA claim.

4.      Addressing the remaining *Winter* factors, the district court concluded that after ninety days, the balance of harms from a preliminary injunction tips sharply in favor of Ormat and the public interest disfavors an injunction.[3]  The district court did not abuse its discretion in its weighing of the harms and equities or considering whether the injunction is in the public interest.  *See Winter*, 555 U.S. at 24 (noting that the weighing of burdens is a discretionary exercise properly

---

[3] Because the district court found Plaintiffs will suffer irreparable harm, Plaintiffs do not challenge that finding on appeal.

within the province of the district court). Against the harms to Plaintiffs' aesthetic, recreational, and religious and spiritual interests, the district court properly considered the irreparable economic harm to Ormat from halting Project construction beyond ninety days. The record supported the finding that a delay of construction beyond that time would make it "all but certain" that Ormat would not be able to complete construction by the end of 2022 and would therefore stand to lose $30 million over twenty years. *See Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987) (holding that the analysis includes consideration of economic losses). Beyond the economic losses to Ormat, the district court properly considered the public interest in "a source of carbon-free baseload electricity," royalty returns to the federal government, and state and local taxes which would be collected as a result of the Project, all of which it reasonably concluded would be threatened by an injunction longer than ninety days.

**Case No. 22-15092 is DISMISSED as moot, and each party shall bear its own costs on that appeal. Case No. 22-15093 is AFFIRMED, and costs shall be awarded to Ormat on that appeal.**

11